**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| WILLIAM STUART DUNCAN and SHERRI R. DUNCAN, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:20-cv-2543-DCN |
| vs. | ) ) | **ORDER** |
| CENTRAL LOAN ADMINISTRATION & REPORTING d/b/a CENLAR | ) ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant Central Loan Administration & Reporting's ("Cenlar") partial motion to dismiss, ECF No. 11. For the reasons set forth below, the court grants the motion.

## I.  BACKGROUND

This is a dispute between homeowners and their mortgage company. Plaintiffs William Stuart Duncan and Sherri R. Duncan ("plaintiffs") executed a mortgage on their residential property in favor of a bank in February 2018. Cenlar, a mortgage servicing company, subsequently purchased plaintiffs' mortgage from the bank, obtaining the rights of and becoming bound by obligations under the mortgage contract. The mortgage contract requires the borrower, i.e., plaintiffs, to maintain hazard insurance on the property and gives the Cenlar the right to obtain hazard insurance if the borrower fails to maintain it:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.

1

[. . .]

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage.

ECF No. 11-2 at 6–7.[1]  The mortgage contract also requires plaintiffs to pay into an escrow account "to provide for payment of amounts due for", inter alia, taxes and assessments on the property and premiums for insurance policies covering structures on the property.  Id. at 5.

In their complaint, plaintiffs allege that on April 4, 2019, Cenlar sent Sherri Duncan a letter "notifying her that her property was uninsured" (the "Hazard Insurance Notice Letter").  Compl. ¶ 6.  According to the complaint, the Hazard Insurance Notice Letter stated that plaintiffs had failed to obtain hazard insurance and explicitly stated, "Because hazard insurance is required on your property, we plan to buy insurance for your property."  Id.  Plaintiffs claim that despite the letter, Cenlar failed to obtain any insurance covering plaintiffs' property.  On April 19, 2019, plaintiffs allege that a severe storm uprooted a tree on their property, which fell onto their detached garage, causing significant damage to the garage and requiring the tree's removal.

On June 3, 2020, plaintiffs filed this lawsuit against Cenlar in the Georgetown Court of Common Pleas, alleging claims for breach of contract and gross negligence. ECF No. 1-1.  On July 8, 2020, Cenlar removed the action to this court, based on the

---

[1] The court generally relegates its consideration of a motion to dismiss to allegations contained in the complaint.  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  In this instance, however, the court is authorized to consider the mortgage contract because it is "attached to the motion to dismiss" and "integral to the complaint and authentic."  Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

court's diversity jurisdiction over the subject matter.  ECF No. 1.  On July 24, 2020,

plaintiffs amended their complaint, alleging additional claims against Cenlar for breach

of fiduciary duty and for "bailment".  ECF No. 5.  On August 21, 2020, Cenlar filed a

partial motion to dismiss, requesting dismissal of plaintiffs' claims for gross negligence,

breach of fiduciary duty, and bailment.  ECF No. 11.  Plaintiffs responded to the motion

on September 3, 2020, ECF No. 12, and Cenlar replied on September 10, 2020, ECF No.

14.  As such, the motion is ripe for the court's resolution.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for

"failure to state a claim upon which relief can be granted."  When considering a Rule

12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true

and draw all reasonable inferences in the plaintiff's favor.  E.I. du Pont de Nemours &

Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the

court's task is limited to determining whether the complaint states a "plausible claim for

relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of

the claim showing that the pleader is entitled to relief," "a formulaic recitation of the

elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007).  Instead, the "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678

(quoting Twombly, 550 U.S. at 570).

## III.  DISCUSSION

In its motion, Cenlar requests dismissal on each of plaintiffs' tort causes of

action[2]—negligence/gross negligence, breach of fiduciary duty, and bailment—arguing

that plaintiffs cannot "inject various tort claims" into a dispute that "is inherently

contractual in nature."  ECF No. 11-1 at 1–2.  The court discusses Cenlar's arguments

with respect to each claim in turn.

### A.  Negligence/Gross Negligence

As its first ground for dismissal, Cenlar argues that "[p]laintiffs' negligence claim

cannot be founded on an alleged breach of the mortgage contract."  ECF No. 11-1 at 3.

To bring a successful negligence claim in South Carolina, a plaintiff must demonstrate

that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the

duty by a negligent act or omission; (3) the defendant's breach was the actual or

proximate cause of the plaintiff's injury; and (4) the plaintiff suffered damages."  Doe v.

Marion, 645 S.E.2d 245, 250 (S.C. 2007).  Gross negligence is "the failure to exercise

slight care."  Steinke v. S.C. Dep't of Labor, Licensing & Regulation, 520 S.E.2d 142,

153 (S.C. 1999).  The South Carolina Supreme Court has also defined gross negligence

as "the intentional, conscious failure to do something which it is incumbent upon one to

do or the doing of a thing intentionally that one ought not to do."  Id.  Gross negligence

"is a relative term and means the absence of care that is necessary under the

---

[2] Cenlar's motion does not request dismissal on plaintiffs' first cause of action for breach of the mortgage contract.

4

circumstances." Id. (quoting Hollins v. Richland Cty. School Dist. One, 427 S.E.2d 654, 656 (S.C. 1993). Well-settled South Carolina law instructs that a negligence claim cannot be premised upon the breach of a contractual duty. See Enhance-It, L.L.C. v. Am. Access Techs., Inc., 413 F. Supp. 2d 626, 631 (D.S.C. 2006) ("Under South Carolina law, if the cause of action is predicated on the alleged breach, or even negligent breach, of a contract between the parties, an action in tort will not lie.") (quoting Meddin v. S. Ry.- Carolina Div., 62 S.E.2d 109, 112 (S.C. 1950) and collecting cases).

In this case, it is unclear whether plaintiffs base their negligence/gross negligence claim solely upon Cenlar's contractual duties under the mortgage contract or upon some extra-contractual duty. The complaint states that Cenlar assumed a duty to procure hazard insurance on plaintiffs' property when it: (1) "require[ed] [p]laintiffs to escrow funds for the payment of hazard insurance" and (2) sent plaintiffs the Hazard Insurance Notice Letter, informing plaintiffs that it would procure hazard insurance. Compl. ¶¶ 16– 17. With respect to the former premise, the plaintiffs' obligation to escrow funds is derived from the mortgage contract and therefore cannot form the basis of a tort claim as a matter of law. In other words, Cenlar did not assume an extra-contractual duty of care based on the mortgage contract's requirement that plaintiffs escrow funds. See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995). ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie."). Alternatively, the complaint states that Cenlar voluntarily assumed a duty to procure hazard insurance when it sent the Hazard Insurance Notice Letter, which plaintiffs allege stated, "[Cenlar] plan[s] to buy insurance for your property." Compl. ¶ 6. The court need

not determine whether Cenlar voluntarily assumed a duty by sending the Hazard

Insurance Notice Letter because it agrees with Cenlar that the voluntary assumption

doctrine only applies to physical harm and plaintiffs' loss here is economic.

"An essential element in a cause of action for negligence is the existence of a

legal duty of care owed by the defendant to the plaintiff." Bishop v. S.C. Dep't of Mental

Health, 502 S.E.2d 78, 81 (S.C. 1998). The existence and scope of the duty are questions

of law for the court to determine. Ballou v. Sigma Nu General Fraternity, 352 S.E.2d 488

(S.C. Ct. App. 1986). Generally, an affirmative legal duty to act exists only if created by

statute, contract, relationship, status, property interest, or some other special

circumstance. Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co., 586

S.E.2d 586, 588 (S.C. 2003) (citing Carson v. Adgar, 486 S.E.2d 3, 5 (S.C. 1997)).

However, South Carolina has "long recognized that one who assumes to act, even though

under no obligation to do so, thereby becomes obligated to act with due care." Miller v.

City of Camden, 451 S.E.2d 401, 404 (S.C. Ct. App. 1994) (citing Crowley v. Spivey,

329 S.E.2d 774 (S.C. Ct. App. 1985). As the South Carolina Court of Appeals has noted,

"[t]he recognition of a voluntarily assumed duty in South Carolina jurisprudence is rooted

in the Restatement of Torts." Johnson v. Robert E. Lee Acad., Inc., 737 S.E.2d 512, 514

(S.C. Ct. App. 2012) (collecting South Carolina cases). The relevant section of the

Restatement outlines the voluntary assumption doctrine:

> One who undertakes, gratuitously or for consideration, to render services to
> another which he should recognize as necessary for the protection of the
> other's person or things, is subject to liability to the other for physical harm
> resulting from his failure to exercise reasonable care to perform his
> undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or

6

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (emphasis added).

Mirroring the language of the Restatement of Torts, courts in South Carolina have consistently found that the voluntary assumption doctrine applies only where a plaintiff suffers physical harm from the failure to exercise reasonable care and not where a plaintiff experiences only economic harm. See, e.g., Russell v. City of Columbia, 406 S.E.2d 338, 340 (S.C. 1991) (quoting Restatement (Second) of Torts § 323); Johnson, 737 S.E.2d at 514 (refusing to find that an accounting firm owed a duty of care to a bookkeeper where the former was negligent in analyzing financial records and the latter experienced only economic harm); Hendricks v. Clemson Univ., 578 S.E.2d 711, 714 (S.C. 2003) ("The line of cases [applying the voluntary assumption doctrine] have thus far been limited to situations in which a party has voluntarily undertaken to prevent physical harm, not economic injury."). As this court has previously stated, "The court is unaware of any cases in South Carolina in which liability for harm that results from the failure to exercise reasonable care once a duty is voluntarily assumed extends to anything other than physical harm." Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC, 2016 WL 3189214, at *4 (D.S.C. June 8, 2016) (finding that an insurance adjuster did not assume a duty to act as the plaintiff's agent because the plaintiff experienced purely economic harm); see also McPherson v. CSX Transportation, Inc., 2017 WL 1135291, at *6 (D.S.C. Mar. 27, 2017).

Here, plaintiffs allege that Cenlar breached its duty of care by failing to procure hazard insurance for plaintiffs' property. Although the plaintiffs allegedly experienced damage as a result of the storm, the damage plaintiffs realized as a result of Cenlar's

alleged breach is their inability to collect insurance proceeds. As such, the injury

plaintiffs claim is purely economic. Therefore, the court agrees with Cenlar that even if

Cenlar had assumed a duty to procure hazard insurance on plaintiffs' property, plaintiffs

cannot recover in tort for a breach of that duty. As such, the court grants Cenlar's motion

to dismiss with respect to plaintiffs' claim for negligence/gross negligence.

### B.  Breach of Fiduciary Duty

Second, Cenlar requests dismissal of plaintiffs' breach of fiduciary duty claim,

arguing that "[p]laintiffs fail to state a claim for breach of fiduciary duty because they

have not alleged any circumstances creating a fiduciary relationship between them and

[Cenlar]." ECF No. 11-1 at 5. The court agrees.

In South Carolina, "[a] fiduciary relationship exists when one reposes special

confidence in another, so that the latter, in equity and good conscience, is bound to act in

good faith and with due regard to the interests of the one reposing confidence." O'Shea

v. Lesser, 416 S.E.2d 629, 631 (S.C. 1992). South Carolina courts do not view typical

bank-customer relationships as fiduciary in nature. Regions Bank v. Schmauch, 582

S.E.2d 432, 444 (S.C. Ct. App. 2003); see also Burwell v. South Carolina Nat'l Bank,

340 S.E.2d 786, 790 (S.C. 1986); Owens v. Andrews Bank & Trust Co., 220 S.E.2d 116,

119 (S.C Ct. App. 1975); Johnson v. Serv. Mgmt., Inc., 459 S.E.2d 900, 902 (S.C. Ct.

App. 1995). And at least one court in South Carolina has applied that general view to a

mortgagor-mortgagee relationship. Brown v. C & S Real Estate Servs., Inc., 445 S.E.2d

463, 466 (S.C. Ct. App. 1994). Some South Carolina courts have held that a fiduciary

relationship may emerge between a borrower and lender where the borrower reposes an

additional confidence in the lender and the lender accepts additional responsibilities. See

Burwell, 340 S.E.2d at 790 ("[A] fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers."). Yet, South Carolina law is clear that "no fiduciary relationship between a bank and its depositor exists when the bank is unaware of any special trust reposed in it." Regions Bank, 582 S.E.2d at 444 (citing Burwell, 340 S.E.2d at 790 and Steele v. Victory Sav. Bank, 368 S.E.2d 91, 93 (S.C. Ct. App. 1988)).

Plaintiffs argue that their relationship with Cenlar is fiduciary in nature because Cenlar required that plaintiffs pay money into an escrow account for the purchase of insurance, "took on the responsibility to make premium payments to [p]laintiffs' insurer," and informed the plaintiffs that it would obtain hazard insurance on their property in the Hazard Insurance Notice Letter. ECF No. 12 at 4. As such, plaintiffs conclude, Cenlar has created "special circumstances" that have elevated the typical mortgagee-mortgagor relationship to one that is fiduciary in nature.

As an initial matter, plaintiffs' escrow argument is unconvincing. Nearly every mortgagor-mortgagee relationship requires the mortgagor to pay money into an escrow account for the payment of insurance premiums and taxes. Nothing about such a requirement differentiates Cenlar and plaintiffs' relationship from that of a typical mortgagee-mortgagor relationship, which South Carolina courts have found is not fiduciary in nature. Plaintiffs' argument that the Hazard Insurance Notice Letter elevated their relationship with Cenlar to fiduciary in nature is closer but also misses the mark. There are no allegations that plaintiffs reposed any kind of "special trust" in Cenlar to act on their behalf "in good faith and with due regard to the interests of the one reposing confidence." O'Shea, 416 S.E.2d 629, 631 (S.C. 1992). And even if there were,

plaintiffs do not allege that Cenlar was made aware of any special confidence plaintiffs

reposed in Cenlar, aside from the normal confidences between mortgagor and mortgagee

borne out of the mortgage contract.  Regions, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003)

("As a general rule, a fiduciary relationship cannot be established by the unilateral action

of one party. [ ] The other party must have actually accepted or induced the confidence

placed in him.").  While the court understands how a homeowner could be induced to

rely on statement from his or her mortgage company, such bare reliance is insufficient to

create a fiduciary relationship under South Carolina law.  As such, the court grants the

motion to dismiss with respect to plaintiffs' claim for breach of fiduciary duty.

### C.  Bailment

Finally, Cenlar requests dismissal of plaintiffs' bailment claim.  Plaintiffs allege

that Cenlar and plaintiffs "created a bailment when [Cenlar] required [p]laintiffs to

escrow funds for the payment of hazard insurance premiums, for the mutual benefit of

both parties."  Amend. Compl. ¶ 28.  Cenlar disagrees, arguing that "the escrow account

required by the mortgage [contract] cannot be a bailment[ ] because it does not

contemplate that moneys paid into the escrow account can be reclaimed by the borrowers,

absent a surplus."  ECF No. 11-1 at 7.  Again, the court agrees with Cenlar.

In South Carolina, "[a] bailment is created by the delivery of personal property by

one person to another in trust for a specific purpose, pursuant to an express or implied

contract to fulfill that trust."  Hadfield v. Gilchrist, 538 S.E.2d 268, 272 (S.C. Ct. App.

2000).  "Although the creation of a bailment requires that possession and control over the

subject property pass to the bailee, a bailment also entails an underlying agreement that

the subject property will be returned or accounted for when the bailor reclaims it, and the

bailee's right to control the property is thus subject to the rights of the bailor." 8 C.J.S.

Bailments § 24. While a bailment may arise out of a contractual relationship, an "action

for breach of the duty of care by a bailee sounds in tort." Hadfield, 538 S.E.2d 268, at

273.

The money that plaintiffs paid into the escrow account does not constitute a

bailment. As Cenlar points out, "[t]here is [ ] no bailment if an agreement between the

parties does not require a return of the particular item deposited with the other party." 8

C.J.S. Bailments § 24. Thus, a defining feature of the bailment relationship is the bailor's

ability to call back, and the bailee's obligation to return, the subject property. Pursuant to

the terms of the mortgage contract, that element is absent here. The mortgage contract

requires the borrower to pay funds into an escrow account so that the lender can pay

taxes, assessments, and insurance premium costs on the property. The mortgage contract

also states that the borrower is entitled to reimbursement of escrowed funds only in the

event of a surplus. ECF No. 11-2 at 6 ("If there is a surplus of Funds held in escrow . . .

Lender shall account to Borrower for the excess funds . . ."). In short, the mortgage

contract clearly intends for the escrowed funds be used by the lender, not returned to the

borrower. Plaintiffs have no power to recall escrowed funds, and any return of the funds

occurs by operation of the mortgage contract and only in the event of a surplus. Indeed,

the mortgage contract states that after all payments are made, Cenlar "shall promptly

refund" surplus escrowed funds to plaintiffs. Id. The relationship here is defined by

"payments" and "refunds", not by "holding" and "returning". See 8 C.J.S. Bailments §

24 ("[A]n obligation to return the property is an essential feature of a bailment, since the

purpose of a bailment contemplates the eventual return of the property to the owner.").

11

Even assuming the truth of the complaints' allegations, the court finds that no bailment relationship existed between plaintiffs and Cenlar and therefore grants the motion to dismiss with respect to plaintiffs' bailment claim.  As such, Cenlar's motion to dismiss is granted in full.

### IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** Cenlar's partial motion to dismiss.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**October 6, 2020
Charleston, South Carolina**